# STATE OF MICHIGAN

# COURT OF APPEALS

ALLSTATE INSURANCE COMPANY,

       Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee,

and

LORENZO CAUSEY,

       Defendant.

FOR PUBLICATION
October 3, 2017
9:00 a.m.

No. 331885
Wayne Circuit Court
LC No. 14-014964-NF

Before: BECKERING, P.J., and MARKEY and RIORDAN, JJ.

MARKEY, J

Plaintiff Allstate Insurance Company, an assigned claims insurer, appeals by right the trial court's order granting defendant State Farm Mutual Automobile Insurance Company (defendant), the insurer of the at-fault driver, Lorenzo Causey, summary disposition under MCR 2.116(C)(7) (statute of limitations) and MCR 2.116(C)(10) (no genuine issue of a material fact).[1] Because plaintiff's reimbursement action was timely under MCL 500.3175(3), and it was entitled to reimbursement from defendant for all of the no-fault benefits, we reverse and remand.

On October 31, 2012, Causey was driving a motor vehicle when he struck Amanda Pettaway as she was crossing the road at an intersection, causing her injuries. Pettaway applied for personal protection insurance (PIP) benefits through the Michigan assigned claims plan. In a letter dated April 10, 2013, the assigned claims plan informed Pettaway's attorney that Pettaway's claim had been assigned to plaintiff.

---

[1] Because the parties do not appeal the trial court's previous grant of summary disposition to Lorenzo Causey, this opinion will refer to State Farm as "defendant."

-1-

Plaintiff retained Data Surveys, Inc. (Data Surveys), to investigate Pettaway's claim. Data Survey's report dated May 10, 2013 confirmed that Causey was the owner of the vehicle involved in the accident but that the company had not been able to directly contact him. The According Data Survey report stated that Causey "refused to come to the front door and was conveying information through his daughter to the investigator." Specifically, "that the involved vehicle reportedly was his only automobile" and that the vehicle was not insured.

On November 20, 2014, plaintiff brought suit against Causey seeking to recover under MCL 500.3177(1)[2] for all the no-fault benefits it had paid to or no behalf of Pettaway. On February 25, 2015, Causey's counsel filed an appearance and plaintiff learned that Causey was in fact insured by State Farm on the date of the accident. On May 27, 2015, an order was entered reflecting the parties' stipulation to plaintiff's filing an amended complaint identifying State Farm as a party defendant, which was filed with the stipulation. Plaintiff asserted in the amended complaint that it was entitled under MCL 500.3175 and MCL 500.3177 to recover $40,974.42 from defendant as the amount of no-fault benefits it had paid to or on Pettaway's behalf.

Defendant asserted that plaintiff's claim was untimely and barred by MCL 500.3175(3). This statute, which pertains to insurers assigned claims under the assigned claims plan, states in part that "[a]n action to enforce rights to indemnity or reimbursement against a third party shall not be commenced after the later of 2 years after the assignment of the claim to the insurer or 1 year after the date of the last payment to the claimant." MCL 500.3175(3).

Causey also moved for summary disposition under MCR 2.116(C)(10) on the basis that plaintiff could not recover benefits from him because it was undisputed that his vehicle was insured by defendant State Farm on the date of the accident; therefore, he was not an "uninsured" motorist under MCL 500.3177. Plaintiff opposed Causey's motion, asserting that Causey was a necessary party to the action because Causey "fraudulently concealed the identity of his insurer" and that the tolling provisions of MCL 600.5855 should be applied to its claim. On September 14, 2015, after hearing oral argument, the trial court granted Causey's motion and dismissed Causey from the case without prejudice.

On November 18, 2015, defendant moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10) on the ground that the amended complaint did not comply with MCL 500.3175(3) because it was filed more than two years after the assignment of Pettaway's claim and had not brought within "1 year after the date of the last payment to the claimant[.]" Defendant argued that the only payments plaintiff made relating to Pettaway's claim within one year of the amended complaint were made on July 3, 2014 ($814.92) and August 11, 2014 ($2037.30) to Van Dyke Spinal Rehabilitation. Defendant further asserted that it had "issued payments" in those amounts to plaintiff's attorneys and the MACP. Thus,

---

[2] "MCL 500.3177(1) allows an insurer paying benefits in a case involving an uninsured vehicle to seek reimbursement from the owner of that vehicle[.]" *Cooper v Jenkins*, 282 Mich App 486, 490; 766 NW2d 671 (2009).

defendant argued, no controversy existed because defendant had already reimbursed plaintiff for the payments plaintiff had made within the year before filing the amended complaint.

In response to defendant's motion, plaintiff asserted that it rather than defendant was entitled to summary disposition under MCR 2.116(I)(2). Plaintiff maintained that the limitations period was tolled because Causey fraudulently concealed that State Farm provided insurance coverage for Causey and his vehicle. Plaintiff also argued that the payments to it had made to Pettaway's medical providers within one year of filing its amended complaint satisfied the requirements of MCL 500.3175(3). Plaintiff asserted that defendant's position—that a one-year-back rule applies to an assigned insurer's right to reimbursement—was without merit.

On January 8, 2016, the trial court heard oral argument on defendant's motion. The first part of the hearing focused on whether the statute of limitations could be tolled because of Causey's purportedly "fraudulent" behavior. The parties argued over whether plaintiff could prove its allegations because plaintiff had not attached any affidavits to its motion. The trial indicated it "begrudgingly" have to grant defendant's motion, apparently based on plaintiff's failure to present evidence that would be admissible to prove fraud. The parties then argued the limitations period found in MCL 500.3175(3). Plaintiff argued that because defendant had reimbursed plaintiff for the payments to VanDyke Spinal Rehabilitation made in July and August 2014 that defendant also was obligated to reimburse plaintiff for all of the payments that plaintiff had made on Pettaway's PIP claim. The trial court disagreed with this argument and granted defendant's motion for summary disposition "for the reasons stated on the record." An order to that effect was entered on January 8, 2016.

Plaintiff moved the trial court to reconsider, arguing that under *Farm Bureau Ins Co v Chukwueke* (*Chukwueke I*), unpublished opinion per curiam of the Court of Appeals, issued January 17, 2013 (Docket No. 306827), plaintiff was entitled to reimbursement of the other payment it made to Van Dyke Spinal totaling $20,495.55. Defendant responded by arguing, in part, that, according to *Farm Bureau Ins Co v Chukwueke* (*Chukwueke II*), unpublished opinion per curiam of the Court of Appeals, issued June 16, 2015 (Docket No. 320600), plaintiff was only entitled to reimbursement for payments made after May 27, 2014, which defendant had already tendered. In denying plaintiff's motion for reconsideration, the trial court ruled that "[b]ased on the rationale in [*Chukwueke I*], Plaintiff is only entitled to reimbursement for payments made after May 27, 2014; these payments have been reimbursed by Defendant."

Plaintiff now appeals by right.

## I. ANALYSIS

### A. STANDARD OF REVIEW / PRINCIPLES OF LAW

This Court reviews de novo a ruling on a motion for summary disposition. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). We also reviewed questions of statutory interpretation de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

MCR 2.116(C)(7) "permits summary disposition where the claim is barred by an applicable statute of limitations." *Nuculovic*, 287 Mich App at 61. When addressing such a motion, a trial court must accept as true the allegations of the complaint unless contradicted by

-3-

the parties' documentary submissions. *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Although not required to do so, a party moving for summary disposition under subrule (C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). If no material facts are disputed, whether a plaintiff's claim is barred by the pertinent statute of limitations is a question of law for the court to determine. *Dextrom*, 287 Mich App at 429.

"If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." <u>Rossow v Brentwood Farms Dev, Inc</u>, 251 Mich App 652, 658; 651 NW2d 458, 461 (2002).

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Atchison v Atchison*, 256 Mich App 531, 535; 664 NW2d 249 (2003). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). A court may go beyond the statutory text to ascertain legislative intent only if an ambiguity exists in the language of the statute. *Id*. at 312. But a statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or it is equally susceptible to more than a single meaning. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 177 n 3; 730 NW2d 722 (2007). "Words and phrases used in a statute should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole." *City of Rockford v 63rd Dist Court*, 286 Mich App 624, 627; 781 NW2d 145 (2009).

## B. APPLYING MCL 500.3175(3)

We conclude that the trial court erred in granting defendant summary disposition and in denying plaintiff summary disposition. Plaintiff's reimbursement action was timely under MCL 500.3175(3), and plaintiff was entitled to reimbursement from defendant for all of the no-fault benefits it paid on Pettaway's behalf.

The purpose of the no-fault act, MCL 500.3101, *et seq.*, "is to ensure the compensation of persons injured in automobile accidents." *Hill v Aetna Life & Cas Co*, 79 Mich App 725, 728; 263 NW2d 27 (1977). "The priority statutes, MCL 500.3114 and MCL 500.3115, define against whom an individual may make a claim for benefits." *Covenant Med Ctr v State Farm Mut Auto Ins Co*, ___ Mich ___, ___; 895 NW2d 490, 503 (2017). If a pedestrian injured in a motor vehicle accident does not have no-fault insurance and neither does a relative in that person's household, MCL 500.3114(1), then the person may claim PIP benefits from "[i]nsurers of owners or registrants of motor vehicles involved in the accident." MCL 500.3115(1)(a).

In this case, neither Pettaway nor any relative domiciled in her household was a named insured in a no-fault insurance policy. MCL 500.3114(1). So defendant, as the insurer of the vehicle involved in the motor vehicle-pedestrian accident was in the highest order of priority to pay Pettaway's claim for PIP benefits under MCL 500.3115(1). But, because Pettaway did not

know that Causey had no-fault insurance, she sought PIP benefits through the assigned claims plan. "If no insurance is available, a person may obtain benefits through the Assigned Claims Plan, which serves as the insurer of last priority." *Titan Ins Co v American Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015); MCL 500.3172(1). The Michigan automobile insurance placement facility adopts and maintains an assigned claims plan. MCL 500.3171(2). An insurer assigned a claim under the assigned claims plan "shall make prompt payment of loss in accordance with this act" and is "entitled to reimbursement by the Michigan automobile insurance placement facility for the payments . . . ." MCL 500.3175(1). Furthermore, an "insurer to whom claims have been assigned shall preserve and enforce rights to indemnity or reimbursement against third parties . . . ." MCL 500.3175(2).

The parties also rely on MCL 500.3172(1) as the source of plaintiff's right to reimbursement. That section also provided for Pettaway's initial claim for PIP benefits from the assigned claims plan. MCL 500.3172(1) provides:

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. *In that case, unpaid benefits due or coming due may be collected under the assigned claims plan and the insurer to which the claim is assigned is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility.* [Emphasis added.]

In *Allen v Farm Bureau Ins Co*, 210 Mich App 593, 597; 534 NW2d 177 (1995), this court read the emphasized statutory language as the source of an assigned claims insurer's "statutorily created right to reimbursement . . . ." But the emphasized language plainly refers to the situation where a no-fault insurer is unable to provide PIP benefits because of "financial inability;" it references to "that case," apparently referring only to the last situation described in the preceding sentence when it states that the assigned insurer "is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility," MCL 500.3172(1), which description only matches defaulting insurers is the last situation described in preceding sentence.

An assigned claims insurer's *general* right to reimbursement is found in MCL 500.3175, which provides "recourse" "to an assigned-claim insurer that later discovers a higher priority insurer." *Spencer v Citizens Ins Co*, 239 Mich App 291, 305; 608 NW2d 113 (2000). MCL 500.3175(2) provides that an assigned insurer "shall preserve and enforce rights to indemnity or reimbursement against third parties and account to the Michigan automobile insurance placement facility for the rights and shall assign the rights to the Michigan automobile insurance placement facility on reimbursement by the Michigan automobile insurance placement facility." Thus, an assigned claims insurer "has both the authority and the duty to enforce any available rights to

-5-

indemnity or reimbursement that could have been pursued by claimants against third parties." *Auto-Owners Ins Co v Mich Mut Ins Co*, 223 Mich App 205, 210; 565 NW2d 907 (1997). "Third parties" as used in MCL 500.3175 include insurers that were liable for no-fault benefits that were paid by an assigned insurer. *Id*.

In this case, the dispute centers on the limitations period found in MCL 500.3175(3), which provides that "[a]n action to enforce rights to indemnity or reimbursement against a third party shall not be commenced after the later of 2 years after the assignment of the claim to the insurer or 1 year after the date of the last payment to the claimant." MCL 500.3175(3). Plaintiff does not dispute that its amended complaint identifying State Farm as a party defendant was filed more than two years after it was assigned Pettaway's claim. Hence, plaintiff's reimbursement action must have been commenced within "1 year after the date of the last payment to the claimant" to be timely under MCL 500.3175(3).

## 1. CLAIMANT

"No provision of the no-fault act expressly defines 'claimant.' ". *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 506 (BERNSTEIN J., dissenting). Defendant does not dispute plaintiff's assertion that "[a] medical provider is a claimant . . . ." This Court has recognized that under the no-fault act there exists a distinction between the terms "injured person"[3] and "claimant." See *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins*, 250 Mich App 35, 40-41; 645 NW2d 59 (2002), overruled by *Covenant Med Ctr*, ___ Mich at ___, where this Court held in part that a medical provider could recover attorney fees as "a claimant" under MCL 500.3148(1). Further, the no-fault act expressly authorizes insurance companies to pay PIP benefits directly to medical providers. MCL 500.3112. This provision provides in part:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. [MCL 500.3112.]

Of course, our Supreme Court's recent decision in *Covenant Med Ctr*, ___ Mich ___, casts significant doubt on whether medical providers can be considered claimants under the no-fault act. In that case, the Court overruled *Lakeland Neurocare Ctrs* and numerous other published opinions of this Court when it held "that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." *Id*. at ___; 895 NW2d at 493. The Court rejected the plaintiff's argument that numerous provisions of the no-fault act supported the conclusion that healthcare providers could maintain such actions. *Id*. at ___; 895 NW2d at 498-505. The plaintiff primarily relied on MCL 500.3112, which the Court noted, "undoubtedly allows no-fault insurers to

---

[3] MCL 500.3109(2) defines "injured person" as "a natural person suffering accidental bodily injury."

directly pay healthcare providers for the benefit of an injured person, [but] its terms do not grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person." *Id.* at ___; 895 NW2d at 493.

Pertinent to this case, the plaintiff in *Covenant Med Ctr* also relied on MCL 500.3148(1), which provides that "[a]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue," and MCL 500.3145, which provides the limitations period for the recovery of PIP benefits "payable under this chapter" and specifically refers to "the claimant." *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 503 n 37. The plaintiff argued that "the Legislature's use of the word 'claimant,' instead of 'injured person,' demonstrates that other persons, like providers, may bring lawsuits to recover PIP benefits." *Id*. The Court disagreed, reasoning as follows:

> Plaintiff's reliance on the references to "claimant" rather than "injured person" in MCL 500.3145(1) and MCL 500.3148 is helpful to plaintiff's argument only if healthcare providers are proper claimants under the no-fault act. The provisions cited by plaintiff do not establish that providers possess a claim under the act. Because MCL 500.3145(1) and MCL 500.3148 do not create rights to PIP benefits that do not otherwise exist, plaintiff's reliance on these provisions is misplaced. [*Id*.]

The Court also noted that "[t]he relevant dictionary definitions of 'claim' include 'a demand for something due or believed to be due' and 'a right to something.' " *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 501 n 31. The Court concluded "that to have a 'claim' under the no-fault act, a provider must have a right to payment of PIP benefits from a no-fault insurer[,]" *id*., and held that the plaintiff had not demonstrated that "the no-fault act elsewhere confers on a healthcare provider a right to claim benefits from a no-fault insurer." *Id*.; 895 NW2d at 501.

Important to this case, our Supreme Court in *Covenant Med Ctr* was not interpreting MCL 500.3175(3) or directly addressing the issue of whether "claimant" as used under the no-fault act includes medical providers. But the Court's implicit ruling that a healthcare provider does not have a right to claim benefits from a no-fault insurer apparently precludes a healthcare provider from being a "claimant" under the no-fault act. Although a healthcare provider may request and receive payment from a no-fault insurer for services furnished to an injured person, MCL 500.3112; *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 493, 500, that does not mean that the provider is a "claimant" entitled to receive no-fault benefits. Rather, it is the injured person who is the claimant that receives PIP benefits, in the form of the insurer paying the healthcare providers.

We note that this interpretation of "claimant" if applied to MCL 500.3175(3) does not lead to the term "claimant" being interpreted synonymously with "the injured person," as the panel in *Chukwueke I* feared, because the no-fault act specifically provides that a claimant may not always be an injured person. For example, MCL 500.3105(4) provides in part that "[b]odily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant." So that subsection contemplates that the claimant could intentionally cause the injured person bodily injury.

-7-

Another obvious example of a claimant being different from the injured person is where the injured person dies as a result of the accident. See e.g., MCL 500.3108(1) (PIP "benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value"); MCL 500.3112 (PIP "benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents.") When the injured person dies, the person claiming no-fault benefits will necessarily be a different person from the one who was injured.

In this case, the claimant is Pettaway, because she had a right to PIP benefits from plaintiff. MCL 500.3172(1); MCL 500.3175(1). The next issue pertains to identifying "the date of the last payment to the claimant." MCL 500.3175(3). The record indicates that plaintiff made payments to Pettaway's healthcare or service providers, as permitted by MCL 500.3112. If read in isolation, one could interpret MCL 500.3175(3) as requiring an assigned claims insurer to bring a reimbursement action within one year of the last payment made directly to the claimant. But a word or phrase in a statute must not be read in a vacuum; it must be harmonized with the whole statute. *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). Thus, "[a]lthough a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context." *Id*. Because no-fault insurers are permitted to make payments to healthcare providers "on the injured person's behalf," *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 493, 501, 503 n 363; MCL 500.3112, to discharge their obligation "to the claimant," we interpret the phrase "payment to the claimant" in MCL 500.3175(3) as including payments made to healthcare providers on the claimant's behalf.

Indeed, in the first published case addressing MCL 500.3175(3), this Court found that an assigned claims insurer timely filed its reimbursement action when it "last paid benefits to or on behalf of [the claimant] on October 16, 1984, and commenced the present action on October 8, 1985." *Allstate Ins Co v Faulhaber*, 157 Mich App 164, 168; 403 NW2d 527 (1987). The *Chukwueke I* panel properly characterized that statement as dicta, unpub op at 5 n 3, because the *Faulhaber* Court was addressing whether MCL 500.3175 should apply retroactively, not whether payments to the claimant include payments made on behalf of the claimant. *Faulhaber*, 157 Mich App at 166-167. As the Supreme Court recently explained, to derive a rule law from the facts of a case "when the question was not raised and no legal ruling on it was rendered, is to build a syllogism upon a conjecture." *People v Seewald*, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016). Nevertheless, it is telling that the Court naturally read MCL 500.3175(3) as applying to payments made on behalf of the claimant.

Our conclusion that a no-fault insurer's payment to a healthcare provider who provides necessary services to the injured person constitutes a payment "to the claimant" for purposes of MCL 500.3175(3) is grounded on our reading of this provision in harmony with the no-fault act as a whole, *GC Timmis & Co*, 468 Mich at 421; *City of Rockford*, 286 Mich App at 627, considering that no-fault insurers may make payments on behalf of the injured person directly to healthcare providers "discharge its liability to an injured person." *Covenant Med Ctr*, ___ Mich at ___; 895 NW2d at 493; MCL 500.3112. Consequently, in this case, because plaintiff made payments to VanDyke Spinal Rehabilitation in August 2014 on behalf of the claimant Pettaway, plaintiff's amended complaint filed in May 2015 was a timely reimbursement action against defendant under MCL 500.3175(3).

## 2. SCOPE OF RELIEF

Having determined that plaintiff's action was timely, we must consider the question of what damages it may recover. Plaintiff argues that this Court should determine it is entitled to reimbursement of all no-fault benefits paid to or on behalf of Pettaway if any single benefit is paid within one year of filing the reimbursement action. Defendant argues that where a plaintiff commences a reimbursement action more than two years after the assignment of the claim, as in this case, MCL 500.3172 should be read together with MCL 500.3175(3), to limit reimbursement to payments made within one year before the filing of the complaint.

Defendant does not assert that the one-year-back rule of MCL 500.3145 applies to the present reimbursement action, but consideration of that provision sheds light on the instant matter. MCL 500.3145 provides in pertinent part as follows:

> (1) An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, *the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced*. . . . [MCL 500.3145(1);Emphasis added.]

Under the emphasized language, "even where the period of limitations is tolled under the notice of injury or payment of benefits exceptions, an insured can only recover benefits for losses incurred within one year preceding the commencement of the action." *Hudick v Hastings Mut Ins Co*, 247 Mich App 602, 607; 637 NW2d 521 (2001)(citation and quotation marks omitted). But MCL 500.3175(3), rather than MCL 500.3145(1), provides the "limitation period for actions brought by an assignee insurer for indemnity or reimbursement." *Allen*, 210 Mich App at 597.

Unlike MCL 500.3145(1), MCL 500.3175(3) does not limit the damages that may be recovered in a timely action. Instead, MCL 500.3175(3) is a statute of limitations, not a statute that limits the period during which payments may be reimbursed. If the Legislature had intended to preclude assigned claims insurers from recovering reimbursement of no-fault benefits that were paid more than a year before the filing of the action, MCL 500.3145(1) shows that it clearly knew how to do so. See *People v Houston*, 473 Mich 399, 410; 702 NW2d 530 (2005).

Furthermore, MCL 500.3172 highlights that higher priority insurers are to fully reimburse no-fault benefits wrongly paid through the assigned claims plan. When a dispute over coverage for PIP benefits arises between two insurers, "MCL 500.3172(3) establishes a procedure by which a claimant is provided personal protection insurance benefits while the insurers resolve their dispute." *Spectrum v Grahl*, 270 Mich App 248, 255; 715 NW2d 357 (2006). MCL 500.3172(3) provides that the insurers shall notify the Michigan automobile insurance placement facility of their dispute, who in turn will assign the claim to an insurer.

MCL 500.3172(3)(a)-(b). That insurer then commences an action, joining the disputing insurers as party defendants, and "[t]he circuit court shall declare the rights and duties of any interested party whether or not other relief is sought or could be granted." MCL 500.3172(3)(e). If the circuit court determines reimbursement should be ordered, the order "shall include all benefits and costs paid or incurred by the Michigan automobile insurance placement facility and all benefits and costs paid or incurred by insurers determined not to be obligated to provide applicable personal protection insurance benefits . . . ." MCL 500.3172(3)(f).

To be clear, MCL 500.3172(3) does not apply to this case because plaintiff's assignment did not arise out of a coverage dispute between insurers. But the section is illustrative of how the statute considers that the no-fault insurer with the highest priority provide reimbursement for "all benefits and costs paid or incurred by the Michigan automobile insurance placement facility and all benefits and costs paid or incurred by insurers determined not to be obligated to provide applicable personal protection insurance benefits," which would include assigned insurers.

As a statutory scheme, the no-fault act contemplates that the higher priority insurer will fully reimburse the Michigan automobile insurance placement facility and the assigned claims insurer; consequently, there is no restriction on the recoverable damages in a timely filed reimbursement action that can be read into MCL 500.3175(3). Thus, we find plaintiff is entitled to recover all no-fault benefits paid on Pettaway's behalf for which defendant was, in fact, responsible as the higher priority insurer.

Defendant argues that its reading of the statute would frustrate the primary purposes of statutes of limitations of "(1) encouraging the plaintiffs to diligently pursue claims and (2) protecting the defendants from having to defend against stale and fraudulent claims." *Wright v Rinaldo*, 279 Mich App 526, 533; 761 NW2d 114 (2008). Specifically, defendant argues that "[p]laintiff's ability to revive old payments would maintain a constant threat of litigation, and would encourage delay in asserting a legal right that is practicable to assert." But this argument ignores the requirement of the no-fault act that an assigned claims insurer "shall make prompt payment of loss in accordance with this act." MCL 500.3175(1). Thus, assignee insurers cannot "revive" a reimbursement action at any time as defendant suggests. Rather, they must make prompt payment, MCL 500.3175(1); they then may bring a reimbursement claim within a year from the date of the last payment, MCL 500.3175(3).

In sum, MCL 500.3175(3) only pertains to when a reimbursement action must be brought. In contrast to MCL 500.3145(1), it does not preclude reimbursement for benefits paid more than a year before the filing of the action. Although MCL 500.3172(3)(f) is not directly applicable to the matter before us, no provision of the no-fault act suggests that an assigned claims insurer should not be fully reimbursed. Thus, reading the no-fault act as a whole, *City of Rockford*, 286 Mich App at 627, or in para materia, we must conclude that an assigned claims insurer may be reimbursed for all no-fault benefits paid to or on behalf of the person entitled to them, MCL 500.3112, in this case claimant Pettaway, when it files a timely claim under MCL 500.3175(3).

Here, plaintiff's claim was timely because it was brought within a year of its last payment "to the claimant" for purposes of MCL 500.3175(3). Accordingly, plaintiff was entitled to recover from defendant all the no-fault benefits it paid to Pettaway or on her behalf.

-10-

Consequently, we hold that the trial court erred in granting defendant summary disposition, and it instead should have granted plaintiff summary disposition under MCR 2.116(I)(2).

Based on our holding regarding MCL 500.3175(3), we decline to address the parties' arguments concerning tolling. "An issue is moot if this court cannot fashion a remedy." *Silich v Rongers*, 302 Mich App 137, 151-152, 840 NW2d 1 (2013). "As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

We reverse and remand this matter to the trial court for further proceedings consistent with this opinion. Plaintiff, as the prevailing party, may tax its cost under MCR 7.219. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Jane M. Beckering
/s/ Michael J. Riordan