# STATE OF MICHIGAN

# COURT OF APPEALS

CITIZENS INSURANCE COMPANY OF
AMERICA,

       Plaintiff-Appellee,

v

JERRY SHOLTEY,

       Defendant/Third-Party Plaintiff-
Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

       Defendant/Third-Party Defendant-
Appellant.

UNPUBLISHED
October 25, 2018

No. 337309; 338082
Genesee Circuit Court
LC No. 13-101298-NF

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 337309, third-party defendant, Auto Club Insurance Association ("ACIA"), appeals as of right the trial court's order granting third-party plaintiff, Jerry Sholtey's, motion for summary disposition. In Docket No. 338082, ACIA appeals as of right the trial court's order awarding Sholtey no-fault attorney fees and interest. This matter arises out of ACIA's cancellation of a no-fault insurance policy it issued to Sholtey, and specifically whether the notice ACIA provided was sufficient to effectuate that cancellation. We affirm the trial court's order granting Sholtey's motion for summary disposition, but reverse the order awarding Sholtey no-fault attorney fees and interest.

## I. BACKGROUND

### A. FACTS AND PROCEDURAL OVERVIEW

On January 9, 2012, Christine Delavega was injured while driving a vehicle owned by and registered to her father, Jerry Sholtey. After the accident, Delavega first sought personal protection insurance (PIP) benefits from ACIA, Sholtey's no-fault insurance carrier for 30 years. In early 2011, Sholtey had renewed his policy for a one-year term beginning May 1, 2011,

-1-

through May 1, 2012. Sholtey opted to pay his premiums on an installment plan. Notwithstanding this apparent policy renewal, ACIA denied Delavega's claim for no-fault benefits, asserting that it had cancelled Sholtey's policy effective January 3, 2012, for failure to pay the premiums. ACIA alleged that a notice of cancellation was mailed to Sholtey on December 15, 2011, purporting to warn him of the impending termination of the policy. Sholtey claimed that he never received ACIA's cancellation notice.

Because Delavega did not have any alternative coverage, she sought PIP benefits through the Michigan Assigned Claims Plan.[1] On February 9, 2012, Delavega's claim was assigned to plaintiff, Citizens Insurance Company of Michigan ("Citizens"). Thereafter, Citizens paid Delavega's PIP benefits.

Operating under the belief that Sholtey was uninsured, Citizens filed suit against Sholtey seeking reimbursement of the no-fault benefits it had paid to or on behalf of Delavega. In his answer to Citizen's complaint, Sholtey alleged that he was insured by ACIA on the date of the accident. In addition, Sholtey filed a third-party complaint against ACIA for breach of the insurance contract. In turn, Citizens added ACIA as a party-defendant to its complaint for reimbursement.

In its answers and affirmative defenses, ACIA alleged that it sent a cancellation notice to Sholtey on December 15, 2011, indicating that the policy would cancel on January 3, 2012, unless the outstanding past-due premiums were paid. ACIA asserts that when the premiums were not paid, the policy was properly terminated, effective January 3, 2012.

Eventually, after protracted litigation, including multiple motions for summary disposition, the trial court held that ACIA had not timely and properly cancelled Sholtey's policy. Accordingly, the court granted summary disposition to Sholtey, denied ACIA's motion for summary disposition, entered judgment in favor of Citizens, and directed ACIA to reimburse Citizens for the no-fault benefits it had paid. The trial court initially denied Sholtey's request for no-fault penalty interest and attorney fees, but on rehearing, the trial court granted that request.

## B. APPLICABLE STATUTES

To place the facts in context, a brief review of the statutory provisions governing policy cancellations is helpful. MCL 500.3020 governs the cancellation of insurance policies by setting forth the provisions that must be included in policies of insurance. MCL 500.3020(1)(b) provides:

> (1) A policy of casualty insurance, except worker's compensation and mortgage guaranty insurance, including all classes of motor vehicle coverage,

---

[1] Pursuant to MCL 500.3171, the Michigan Automobile Insurance Placement Facility maintains the Michigan Assigned Claims Plan. "If no insurance is available, a person may obtain benefits through the Assigned Claims Plan, which serves as the insurer of last priority." *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015).

shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:

\* \* \*

(b) Except as otherwise provided in subdivision (d), that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

In addition, MCL 500.3020(6) requires that the notice of cancellation include a statement "that the insured shall not operate or permit the operation of the vehicle to which notice of cancellation is applicable, or operate any other vehicle, unless the vehicle is insured as required by law."

MCL 500.3020(1) requires that the "mailing of a notice of cancellation must be reasonably calculated to be delivered so as to arrive at the insured's address at least ten days before the date specified for cancellation for the notice to be effective." *Nowell v Titans Ins Co*, 466 Mich 478, 480; 648 NW2d 157 (2002). However, "[w]hile the Legislature undoubtedly expected that this should ordinarily result in personal receipt of the notice of cancellation by the insured before it became effective, the statutory language utilized cannot fairly be read as requiring actual notice as a condition for a cancellation to become effective." *Id.* at 484.

## C. CANCELLATION DOCUMENTS

Although receipt of various documents was disputed by the parties, there were several pertinent documents presented to the trial court. A document entitled "AUTO INSURANCE-CANCELLATION NOTICE," dated December 14, 2011, provided that Sholtey's ACIA policy would cancel January 3, 2012, "if the TOTAL AMOUNT OWED or the MINIMUM DUE is not received by the company by JAN 03 2012 (12:00 Noon E.T.)." ACIA has, at all times, asserted that this document was placed in the mail to Sholtey on December 15, 2011.

A second document, entitled "CANCELLATION OF POLICY," purports on its face to have been mailed on January 17, 2012, *eight days after the accident*. This document provides:

THIS IS TO NOTIFY YOU THAT YOUR POLICY EFFECTIVE MAY 01, 2011 WAS CANCELLED BECAUSE OF NON-PAYMENT OF PREMIUMS. COVERAGE UNDER THIS POLICY TERMINATED AT 12:01 A.M. ON JAN 03, 2012.

In addition to the foregoing language, the January 17, 2012 cancellation also included the cautionary language: "YOU MAY NOT OPERATE OR PERMIT THE OPERATION OF YOUR VEHICLE, OR OPERATE ANY OTHER VEHICLE UNLESS SUCH VEHICLE IS INSURED AS PROVIDED BY MICHIGAN LAW."

## D. MOTIONS FOR SUMMARY DISPOSITION

On June 20, 2014, Citizens filed a motion for summary disposition, arguing that it was entitled to reimbursement from either Sholtey or ACIA. Citizens reasoned that Sholtey was liable under MCL 500.3177(1), as the owner of an uninsured motor vehicle; alternatively, ACIA would be responsible for reimbursing Citizens under MCL 500.3114 and MCL 500.3175, as the insurer of the vehicle. On August 15, 2014, the trial court entered an order granting Citizens' motion for partial summary disposition and specified the amount of reimbursement due from either Sholtey or ACIA.[2]

Between July 2014 and October 2016, Sholtey and ACIA filed, between the two of them, five motions for summary disposition. In general, ACIA argued that Sholtey's no-fault policy was not in effect at the time of the January 9, 2012, accident because it was cancelled for non-payment of premiums, effective January 3, 2012. ACIA further asserted that a red slip containing the statutorily mandated cautionary language was included in the cancellation documents sent to Sholtey. ACIA relied almost exclusively on the deposition testimony and multiple affidavits of Rhonda Goosic, vice president of Source HOV, a company under contract with ACIA to provide services, including the preparing and mailing of documents.

In contrast, Sholtey argued, among other things, that he had not received the December 15, 2011 cancellation notice, that there was no factual support for the proposition that Source HOV mailed the cancellation notice to Sholtey, and that even if the December 15, 2011 cancellation notice was properly mailed, it was defective because it failed to include the statutorily-required "cautionary language." Sholtey pointed out that Goosic's affidavits routinely contradicted her deposition testimony, which had been that the only document included in the December 15, 2011 mailing to Sholtey was the cancellation notice, and that notice did not contain the cautionary language. The early motions were denied by the trial court as premature. However, following a hearing in October 2016, the trial court held that ACIA did not timely mail a proper notice of cancellation to Sholtey. The trial court granted Sholtey's motion for summary disposition, denied ACIA's motion, granted judgment against ACIA and in favor of Citizens in the revised amount of $381,050.27, and declined to impose sanctions or fees against ACIA.

ACIA subsequently filed a motion for rehearing in which it argued that the trial court erred when it concluded that ACIA failed to give proper notice of cancellation to Sholtey. ACIA assumed, for purposes of its motion, that the court had accepted Sholtey's argument that the red slip containing the statutorily mandated cautionary language was not included in the cancellation documents mailed to Sholtey on December 15, 2011. ACIA requested further opportunity to present additional documentary evidence to refute this assertion. Sholtey also filed a motion for reconsideration of the trial court's denial of no-fault penalty interest and attorney fees against ACIA.

On February 15, 2017, the trial court entered an order denying ACIA's motion for rehearing. The court also considered and granted in part Sholtey's motion for rehearing.

---

[2] As Citizens continued to pay PIP benefits, the amount of the reimbursement request increased. Consequently, on several occasions, Citizens successfully moved to amend the order to change the amount to which it was entitled from either Sholtey or ACIA.

Specifically, the court held that Sholtey was entitled to penalty interest and attorney's fees. It thereafter entered an order permitting Sholtey to recover attorney fees from ACIA in the amount of $57,635.50, and penalty interest in the amount of $71,534.99.

## II. SUMMARY DISPOSITION

ACIA argues that the trial court erred when it denied its motion for summary disposition and, instead, granted summary disposition in Sholtey's favor. Specifically, ACIA asserts that there is a question of fact whether it complied with the requirements of MCL 500.3020. We disagree.

### A. STANDARD OF REVIEW

Both ACIA and Sholtey, in their cross-motions, moved for summary disposition pursuant to MCR 2.116(C)(10). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a motion for summary disposition under MCR 2.116(C)(10), a court must view the evidence submitted in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the evidence submitted "might permit inferences contrary to the facts asserted by the movant." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360; 320 NW2d 836 (1982). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

### B. ANALYSIS

Michigan law requires that the notice of cancellation "shall be accompanied by a statement that the insured shall not operate or permit the operation of the vehicle to which notice of cancellation is applicable, or operate any other vehicle, unless the vehicle is insured as required by law." MCL 500.3020(6). "The general rule is that effective cancellation requires strict compliance with the cancellation clause." *Depyper v Safeco Ins Co of America*, 232 Mich App 433, 438; 591 NW2d 344 (1998). Furthermore, "[i]nsurance contracts should be construed in light of statutory requirements, and mandatory statutory provisions should be read into insurance contracts." *Id*. "The use of the word 'shall' in a statute connotes a mandatory duty or requirement." *Id*. Consequently, the trial court correctly determined that pursuant to MCL 500.3020(6), ACIA was required to include the cautionary statement in its notice of cancellation.

ACIA claims that in addition to the cancellation notice itself, it included a red insert, allegedly bearing the cautionary language, in the December 15, 2011 mailing to Sholtey. However, this assertion is not supported by the evidence presented to the trial court. Source HOV was under contract with ACIA to provide services, including the preparing and mailing of documents on ACIA's behalf. Source HOV's vice president, Rhonda Goosic, specifically testified that the only thing included in the envelope sent to Sholtey on December 15, 2011, was the cancellation notice, and it is undisputed that this notice did not include the cautionary language. Referencing the December 15, 2011 cancellation notice, Goosic explained the significance of two black bars, called OMR marks, next to Sholtey's name in the correspondence:

*A*. To the left of the address block you will see two wide bars.

*Q*. Okay.

*A*. Those are called OMR marks, OMR. And what it does it tells the machine when they see two bars, it tells the machine that this is the first page in the mailing. If there are subsequent mailings that belong in the same envelope you will see single bars.

And for this particular mailing that we did, this cancellation notice, there was only one page. So all we see was two bars. *So only one page or this actual document was the only thing presented in that envelope.* And then to the, then to the upper right of the address block you'll see a very small set of numbers, 4104... [Emphasis added.]

Thus, Goosic clearly and unequivocally testified that the only document in the envelope mailed to Sholtey was the cancellation notice. It is undisputed that this one-page document did not include the cautionary language mandated by MCL 500.3020(6). The omission of this mandatory warning rendered the cancellation notice ineffective:

Insurance laws and policies are to be liberally construed in favor of policyholders, creditors, and the public . . . Construing [MCL 500.3020(6)][3] liberally, in favor of policyholders, and giving due regard to the deterrent purpose of the warning, we hold, as a matter of law, that defendant's failure to give the warning mandated by [MCL 500.3020(6)] renders its cancellation notice ineffective. [*Depyper*, 232 Mich App at 441-442 (internal citations omitted).]

Because the December 15, 2011 cancellation notice failed to comply with the cautionary warning requirement of MCL 500.3020(6), the trial court correctly held that ACIA had not effectively cancelled the policy. As a result, Sholtey was insured by ACIA on the day of Delavega's accident.

## C. ACIA'S ADDITIONAL AFFIDAVITS

Notwithstanding the foregoing, ACIA asserts that three affidavits executed by Goosic after her deposition created a question of fact whether an insert containing the cautionary language was included in the December 15, 2015 mailing. We disagree.

In support of its first unsuccessful motion for summary disposition, ACIA relied on Goosic's July 23, 2014 affidavit, because she had yet to be deposed. In this affidavit, Goosic averred that on December 14, 2011, using information electronically provided by ACIA, Source HOV prepared and then mailed a cancellation notice to Sholtey on December 15, 2011. After

---

[3] At the time the plaintiff in *Depyper* was injured, the cautionary language mandate was found at MCL 500.3020(5).

the trial court denied summary disposition, ACIA deposed Goosic on September 30, 2014. During this deposition, Goosic admitted that, contrary to her first affidavit, Source HOV did not actually mail the cancellation notice to Sholtey. Instead, Sholtey's cancellation notice, along with many others, was forwarded to a different entity, Pitney-Bowes, for "presort services" in order to obtain a lower mailing rate. More significantly, Goosic testified, as discussed above, that the only document in the envelope to Sholtey was the cancellation notice. She also testified that ACIA did not require that Source HOV prepare a mailing manifest containing the names of the recipients of the cancellation notices.

After her deposition, and despite her testimony that no manifests were required, Goosic purportedly nevertheless found a mailing manifest for the December 15, 2011, mailing date that included Sholtey's name. This resulted in a second Goosic affidavit, dated April 9, 2015, in which she attested to the recent discovery of these new documents. Then, when ACIA renewed its motion for summary disposition, it relied on a third affidavit from Goosic, dated September 4, 2015, in which she again switched course and claimed that Source HOV, not Pitney-Bowes, mailed the cancellation notice and included in that mailing envelope not only the cancellation notice, but the red cautionary language insert, and a return envelope. In other words, three separate items.

After the court denied ACIA's motion for summary disposition and granted Sholtey's motion for summary disposition, ACIA provided a fourth Goosic affidavit in its motion for rehearing. In that motion, ACIA sought to present additional documentary evidence to the court, specifically an "Inserts Requirement Sheet" and a "Michigan Legacy-Auto Line Mail Matrix," which apparently required that Source HOV include the red caution insert in every cancellation package. In her fourth affidavit, dated December 16, 2016, Goosic referenced these two documents, and further attempted to explain what she "really meant" by her deposition testimony that "only" the cancellation notice was included in the envelope mailed to Sholtey:

13. In my deposition taken September 30, 2014, pages 27-28, I was asked about the two bars that appeared on the cancellation notice that was mailed to Jerry Sholtey on December 15, 2011, which I explained as follows:

"Those are called OMR marks, OMR, And what it does is it tells the machine that this is the first page in the mailing. If there are subsequent mailings that belong in that same envelope you will see single bars. *And for this particular cancellation notice, there was only one page. So all we see was two bars. So only one page or (sic) this actual document was the only thing presented in that envelope.*"

14. When I testified that "one page" was "the only thing presented in that envelope" to Jerry Sholtey, I was only referring to the "page" that Source HOV printed from the secured, encrypted information provided by ACG, i.e., the cancellation notice for Jerry Sholtey. I was not referring to the two "inserts" that were also included in the total mailing package, i.e., the 606-38E return envelope and the 8800-1223-PS-N9 red Caution Slip.

15. In my affidavit of September 4, 2015, ¶ 6, I explained (consistent with the foregoing statements) that on December 15, 2011, Source HOV inserted into a #10 mailing envelope addressed to Jerry Sholtey . . . (1) the Jerry Sholtey Cancellation notice, (2) a red cautionary insert, and (3) a #9 return envelope.

ACIA asserts that Goosic's three affidavits prepared after her deposition were either consistent with her deposition testimony or, alternatively, simply a further exposition of her testimony. We disagree.

Goosic's affidavits attesting to the presence of additional documents in the mailing to Sholtey, specifically, the red cautionary insert, directly contradicts her deposition testimony. As such, the trial court did not err when it refused to consider this contradictory evidence. "It is well settled that a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony." *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 154-155; 565 NW2d 868 (1997). This rule has been equally applied to the affidavits of nonparty witnesses. *Id*. Accordingly, Goosic's conflicting and contradictory affidavits do not create questions of fact.

In the face of Goosic's clear and unequivocal deposition testimony, ACIA asserts that additional documents independently supported the assertion that Sholtey's cancellation notice included a red cautionary insert. Specifically, ACIA points to a mailing manifest that included Sholtey's name; and a "Mail Services Job Checklist" that purportedly required Source HOV's insert operators to include a "verified insert" and a "correct return envelope" in every cancellation package. These documents were produced before the hearing on the cross-motions for summary disposition. The manifest, however, simply shows that a mailing went out; it does not show the mailing's content. Arguably, the Mailing Services Job Checklist does suggest Source HOV's customary practice. ACIA argues that this evidence was, therefore, sufficient to establish that it mailed a cancellation package to Sholtey that included the cautionary language. In support of this proposition, ACIA relies on this Court's decision in *Good v Detroit Auto Inter-Ins Exch,* 67 Mich App 270, 274-276; 241 NW2d 71 (1976).

In *Good*, this Court held that "upon proper evidence of business custom and habit of a commercial house as to addressing and mailing, the mere execution of the letter in the usual course of business rebuttably presumes subsequent receipt by the addressee." *Good*, 67 Mich App at 276. However, this is a rebuttable presumption and a challenging party may rebut the presumption by presenting evidence to the contrary. *Id*. at 276-278. The Court in *Good* did not consider whether the cancellation notice was legally deficient because the issue was not pleaded in that case. *Id.* at 278. In any event, in this case, Sholtey came forward with sufficient evidence to rebut the presumption that the cautionary insert was included. Specifically, Goosic's unequivocal deposition testimony was that the only document mailed to Sholtey on December 15, 2011, was the notice of cancelation, which did not include the cautionary language. Again, we do not believe ACIA may manufacture its own question of fact.

In its motion for rehearing, ACIA attempted to offer two additional documents that purportedly established the custom of including with the cancellation notice a red cautionary insert and a return envelope. However, the trial court properly exercised its discretion and refused to consider this additional evidence. A trial court does not abuse its discretion when, on

-8-

a motion for reconsideration, it "decline[s] to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012).

Goosic's multiple affidavits did not create a genuine issue of disputed material fact. Accordingly, the trial court properly determined that there was no genuine factual question whether a cautionary insert was included in the December 15, 2011 mailing to Sholtey. ACIA's failure to comply with the requirements of MCL 500.3020(6) rendered the cancellation notice ineffective. Consequently, the trial court did not err when it granted summary disposition in Sholtey's favor.

## III. ATTORNEY FEES AND PENALTY INTEREST

Next, ACIA argues that the trial court incorrectly awarded Sholtey penalty interest and attorney fees under MCL 500.3142 and MCL 500.3148. We agree.

## A. STANDARD OF REVIEW

"A trial court's decision to grant or deny a motion for attorney fees [under the no-fault act] presents a mixed question of fact and law." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689; 828 NW2d 400 (2012). The trial court's findings of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id.* at 690. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009) (citation and quotation marks omitted). However, this Court reviews for an abuse of discretion a trial court's ultimate decision whether to award attorney fees. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* "Issues of statutory interpretation are questions of law that we review de novo." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 309; 645 NW2d 34 (2002).

Additionally, when interpreting a statute, the "primary goal is to give effect to the intent of the legislature." *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). The actual words used in the statute are the best indicator of intent and the words "should be interpreted based on their ordinary meaning and the context within which they are used in the statute." *Dep't of Environmental Quality v Worth*, 491 Mich 227, 237-238; 814 NW2d 646 (2012). When the words are unambiguous, they must be given "their plain meaning." *Rowland*, 477 Mich at 202.

## B. ANALYSIS

The trial court initially denied Sholtey's request for no-fault penalty interest and attorney fees, reasoning that because Citizens timely paid Delavega's PIP benefits, no sanctions would be awarded. However, after ACIA moved for rehearing and presented yet more evidence contradicting Goosic's deposition testimony, the court granted Sholtey's motion for rehearing and held that Sholtey was entitled to penalty interest and attorney fees for the following reasons:

The Court declined to grant this request as Sholtey's claim was paid by Citizens in full, and ACIA, had, in the Court's opinion, initially asserted a viable defense that it had cancelled third-party-plaintiff's policy for nonpayment of premium by mailing to him a notice of cancellation more than ten days prior to the effective date of the cancellation. [MCL 500.3020(1)(b)] [sic.]

However, now that the Court is entering a contemporaneous order denying third-party defendant's motion for rehearing of its motion for summary disposition, under MCR 2.119(F)(3), for the reasons stated in that opinion, the Court will reconsider in part, its failure to have awarded penalty interest attorney fees [sic] to third-party plaintiff Sholtey. Attorney fees are to be awarded under MCL 500.3148(1) against an insurer if the Court finds that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Penalty interest attaches when personal protection benefits are overdue, i.e., not paid within 30 days after an insurer receives reasonable proof of the fact and the award [sic[4]] of loss sustained. (MCL 500.3142).

The Court finds that third-party defendant "unreasonably refused to pay the claim or unreasonably delayed in making proper payment" after September 4, 2015, when Rhonda Goosic provided an affidavit which contradicted her clear and unequivocal deposition testimony of September 30, 2014, which deposition contradicted her July 23, 2014 affidavit.

Accordingly, third-party plaintiff may submit a motion for the modification of the November 28, 2016, order in respect to attorney fees, penalty interest, and an amended or separate order that Citizens' claim against Sholtey is dismissed.

Thereafter, the court awarded Sholtey attorney fees in the amount of $57,637.50, costs in the amount of $125, and interest on the damages in the amount of $71,534.88, plus a daily rate of interest of $125.28 from March 28, 2017 until damages were fully paid. On appeal, ACIA does not take issue with the reasonableness of the award, but instead challenges Sholtey's entitlement under MCL 500.3142 and MCL 500.3148 to any no-fault penalties.

MCL 500.3148 governs awards of attorney fees in no-fault cases. MCL 500.3148(1) provides:

An attorney is entitled to a reasonable fee for advising and representing a *claimant* in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to

---

[4] MCL 500.3142(2) actually provides: "Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the *amount* of loss sustained." (Emphasis added.)

-10-

pay the claim or unreasonably delayed in making proper payment. [Emphasis added.]

Under a plain reading of the statute, an attorney is only entitled to a reasonable fee when advising or representing a "claimant" in an action for personal or property protection insurance benefits which are overdue. The statute does not define "claimant," but our Supreme Court's recent decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), and cases from this Court that followed *Covenant*, offer guidance.

In *Covenant*, the Court held that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of PIP benefits. *Covenant*, 500 Mich at 196. To reach this conclusion, the Court considered several provisions of the no-fault act, including MCL 500.3148(1). The healthcare provider argued that "the Legislature's use of the word 'claimant,' instead of 'injured person,' demonstrated that other persons, like providers, may bring lawsuits to recover PIP benefits." *Id*. at 214 n 37. The Court found this argument unhelpful to the healthcare provider, because no provisions in the act established that healthcare providers were proper claimants under the act, nor did they "create rights to PIP benefits that do not otherwise exist." *Id*. at 215 n 37. The Court in *Covenant* further noted:

> Because the no-fault act does not define "claim," we may consult a dictionary definition . . . The relevant dictionary definitions of "claim" include "a demand for something due or believed to be due" and "a right to something." Merriam–Webster's Collegiate Dictionary (11th ed.). *Therefore, to have a "claim" under the no-fault act, a provider must have a right to payment of PIP benefits from a no-fault insurer.* [*Id*. at 211 n 31 (emphasis added) (internal citation omitted).]

By implication, a "claimant" is someone who has a right to payment of PIP benefits from the no-fault insurer.

Support for this definition of "claimant" is further found in this Court's decision in *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543; 909 NW2d 495 (2017). In that case, Allstate, the assigned-claims insurer, sued State Farm for reimbursement of PIP benefits paid, after it was discovered that State Farm insured the negligent driver. *Id*. at 546-547. At issue in that case was whether the plaintiff's claim for reimbursement was timely under MCL 500.3175(3). *Id*. at 547-548. Again, the definition of "claimant" was integral to the resolution of the issues. This Court held that "it is the injured person who is the claimant that receives PIP benefits, in the form of the insurer paying the health care provider." *Id*. at 558. The Court cautioned that this definition of "claimant" is not necessarily synonymous with "the injured person" because the no-fault act specifically provides that a claimant may not always be an injured person. *Id*. This Court explained:

> For example, MCL 500.3105(4) provides, in part, that "[b]odily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant." So that subsection contemplates that the claimant could intentionally cause the injured person bodily injury.

Another obvious example of a claimant being different from the injured person is when the injured person dies as a result of the accident. See, e.g., MCL 500.3108(1) (providing that PIP "benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value"); MCL 500.3112 (providing that PIP "benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents"). When the injured person dies, the person claiming no-fault benefits will necessarily be a different person from the one who was injured. [*Id*. at 558-559.]

In *Allstate Ins Co*, this Court concluded that the injured person in that case was the "claimant" because she had a right to PIP benefits from the assigned-claim insurer. *Id*. at 559.

The foregoing decisions are instructive. In this case, as ACIA correctly notes, Sholtey's daughter, Delavega, is the "claimant" because she is the only one who is entitled to assert a claim for and receive PIP benefits. Sholtey is not entitled to receive any PIP benefits. Simply put, Sholtey does not qualify as a claimant under the act. As such, the trial court's grant of an award of attorney fees against ACIA and in favor of Sholtey is contrary to the plain language of the statue. Accordingly, reversal is required. Further, as will be explained below, Sholtey was not entitled to an award of attorney fees because the benefits were not "overdue."

The trial court also awarded Sholtey no-fault penalty interest under MCL 500.3142. The court initially declined to award no-fault penalty interest because Citizens promptly paid the PIP benefits, and thus there were no overdue benefits. On rehearing, however, the court awarded interest from September 4, 2015, forward because it found that at that point, ACIA's continuing refusal to pay was unreasonable. We conclude that the trial court erred.

MCL 500.3142 governs no-fault penalty interests, and it provides:

(1) Personal protection insurance benefits are payable as loss accrues.

(2) *Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained*. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. *For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.*

(3) An overdue payment bears simple interest at the rate of 12% per annum. [Emphasis added.]

MCL 500.3142(2) specifically defines "overdue" benefits as those not paid within 30 days after an insurer receives reasonable proof of the fact of the amount of the loss sustained. Moreover, the benefits cease to be "overdue" when payment is actually made. In this case, it is undisputed

that Citizens timely paid the benefits; thus, they ceased to be "overdue" at that point. Clearly, MCL 500.3142 does not contemplate awarding 12% interest under the posture of the present case.

For these reasons, we reverse the trial court's order awarding no-fault attorney fees and penalty interest.

## IV. CONCLUSION

We affirm the trial court's order granting Sholtey's motion for summary disposition in Docket No. 337309, and we reverse the order awarding Sholtey no-fault attorney fees and penalty interest in Docket No. 338082. Citizens and Sholtey may tax costs in Docket No. 337309, and ACIA may tax costs in Docket No. 338082, as the respective prevailing parties in each appeal. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

-13-