*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LIFE SKILLS VILLAGE, PLLC,

        Plaintiff,

and

LIFE SKILLS RESIDENTIAL, LLC,

        Plaintiff-Appellant,

v

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
December 17, 2019

No. 345237
Oakland Circuit Court
LC No. 2017-160986-NF

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In this action for recovery of no-fault benefits, the trial court granted defendant Nationwide Mutual Fire Insurance Company (Nationwide) summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on the grounds that plaintiff Life Skills Residential, LLC (LSR) was operating as an unlicensed adult foster care facility. On appeal, LSR challenges that ruling. For the reasons stated in this opinion, we reverse the grant of summary disposition to Nationwide, but affirm the trial court's decision to deny LSR summary disposition under MCR 2.116(I)(2) (nonmoving party entitled to judgment).

## I. BACKGROUND

The underlying claimant, Donald Oliver, was severely injured in December 2014 when a car struck him as he was walking across a street. He sustained a closed head injury, a spinal cord injury, and multiple broken bones. In June 2016, he began receiving services from plaintiff Life Skills Village (LSV), which is "a day treatment program for patients with brain injury." At LSV,

Oliver received cognitive therapy, behavioral therapy, psychological counseling, occupational therapy, speech therapy, and vocational training.

In October 2016, Oliver was prescribed for entry into a residential program with LSR,[1] where he lived through October 2017. Nate Gardin, LSR's managing member, described LSR as "a semi-independent residential program that's built on helping assist people transition back to independent living." He explained that Oliver was placed in the residential program because his providers felt that he was failing in health and safety concerns.

Oliver was placed in a three-bedroom ranch house that was rented by LSR. He was monitored 24 hours a day by LSR through the use of two cameras inside the house. The LSR staff would prompt residents such as Oliver in important activities of daily living, such as eating, bathing, taking medication if needed, and seeing doctors when needed. Gardin testified that Oliver "needed help in prompting with almost everything. He was able to do things on his own, but frequently didn't. So we had staff that had to go in and prompt him to get up and engage in those services." Gardin explained that Oliver did not require assistance with tasks, only prompting: "Mr. Oliver can get himself dressed. He may need a prompt to wash clothing or to eat or to take medication, but he does not have a direct assist in actually performing that exercise." An LSR employee would perform a daily health and safety check on Oliver. Sometimes the employee would provide Oliver with food or cook for him.

Nationwide is the insurance carrier assigned to provide no-fault benefits to Oliver. In March 2017, Nationwide made payments to LSR for two months of services provided to Oliver, but no further payments were made. After Oliver assigned his right to personal protection insurance (PIP) benefits for services rendered by LSV and LSR, plaintiffs filed this action against Nationwide in September 2017, seeking recovery of the outstanding balances for medical services rendered to Oliver.

In April 2018, Nationwide moved for summary disposition, arguing in part that LSR's claims included charges for adult foster care and room and board provided to Oliver during his stay at the residential home. Nationwide maintained that those charges were not compensable because LSR was not licensed as an adult foster care facility. In response, plaintiffs requested summary disposition under MCR 2.116(I)(2). LSR argued that it provided residential services to persons who did not require adult foster care and were able to take care of their own daily activities and handle their own personal care needs. According to LSR, it would not take patients in the early rehabilitation stages who would require assistance with daily activities.

At the motion hearing, the parties agreed that the only issues in dispute were whether, under the statutory definitions of adult foster care, LSR provided "personal care" and "room and

---

[1] LSV and LSR are separate legal entities. Some of the LSR residents received services from LSV but others did not. Similarly, some LSV patients were treated on an outpatient basis or lived in facilities that were not managed by LSR.

board" to Oliver. In a written opinion and order, the trial court determined that there was no genuine issue of material fact that LSR provided those services to Oliver. Accordingly, the trial court granted Nationwide's motion for summary disposition with regard to LSR's claims, and denied plaintiffs' counter-motion for summary disposition.

The trial court denied Nationwide's motion for summary disposition as to LSV. Upon stipulation of the parties, the court later dismissed LSV's claims against Nationwide. This appeal followed.

## II. ANALYSIS

LSR argues that it was not required to be licensed as a foster care facility, and that the trial court therefore erred in granting summary disposition to Nationwide. We agree.[2]

Under the no-fault act, MCL 500.3101 *et seq.*, "[a] physician, hospital, clinic or other person or institution *lawfully rendering* treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered." MCL 500.3157, as amended by 1972 PA 294 (emphasis added).[3] In order for treatment to be lawfully rendered, and thus recoverable under the no-fault act, a healthcare provider must be in compliance with licensing requirements. *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992).

Nationwide maintains that LSR was providing adult foster care to Oliver in an unlicensed facility. Licensing requirements for institutions providing adult foster care are covered by the Adult Foster Care Facility Licensing Act (AFCFLA), MCL 400.701 *et seq*. An adult foster care

---

[2] We review de novo a trial court's decision on a motion for summary disposition. *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 304 n 3. When reviewing a motion under this subrule, we must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

We also review de novo issues of statutory interpretation. See *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). A court's primary purpose in interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). To do so, we interpret the words, phrases, and clauses in a statute according to their ordinary meaning. See *State News v Mich State Univ*, 481 Mich 692, 699-700; 753 NW2d 20 (2008). "[W]here the statutory language is clear and unambiguous, the statute must be applied as written." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002).

[3] MCL 500.3157 was amended by 2019 PA 21, effective June 11, 2019. We apply the former version, which was in effect at all times relevant to this appeal.

facility cannot be established or maintained unless licensed by the Department of Licensing and Regulatory Affairs. See MCL 400.713(1). An "adult foster care facility" is defined as an "establishment that provides foster care to adults" and "includes facilities and foster care family homes for adults who are aged, mentally ill, developmentally disabled, or physically disabled who require supervision on an ongoing basis but who do not require continuous nursing care." MCL 400.703(4). In turn, "foster care" was defined at all times relevant to this appeal as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation." MCL 400.704(7), as amended by 2016 PA 525.[4] LSR acknowledges that it provided supervision and protection to Oliver within the meaning of the statutory definition of adult foster care, but denies that it provided personal care and room and board. "Personal care" is defined as

> personal assistance provided by a licensee or an agent or employee of a licensee to a resident who requires assistance with dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment. [MCL 400.706(1).]

The undisputed evidence is that LSR did not personally assist its residents with the above listed activities; it merely reminded or prompted the residents to complete those tasks. However, the trial court found that LSR's services satisfied the "second part" of the personal care definition, i.e., "the development of those personal and social skills required to live in the least restrictive environment." MCL 400.706(1).

As an initial matter, the trial court erred in interpreting MCL 400.706(1) as containing a "second part." "[C]ommas generally demark items in a list, and an 'or' before the final item indicates that the entire list is disjunctive." *People v Walker*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343844); slip op at 6. Accordingly, the clause referring to the development of personal and social skills is not an alternative definition of personal care, but rather is the last item in a list of activities. In other words, personal care is defined as personal assistance provided to a resident requiring assistance with *any* of the following: "dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment." MCL 400.706(1).[5] It is also clear that the personal assistance

---

[4] This definition, now found at MCL 400.704(8), was amended by 2018 PA 557, effective March 28, 2019, to define foster care as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation provided at a single address. Providing room under a landlord and tenant arrangement does not, by itself, exclude a person from the licensure requirement under this act."

[5] We reject LSR's argument that the doctrine of *ejusdem generis* is applicable to the interpretation of MCL 400.706(1). That canon of construction provides that if a statute contains a list of particular subjects followed by general words or phrases, the general words or phrases

must pertain to one of the listed activities in order to satisfy the definition of personal care. See *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 559; 909 NW2d 495 (2017) ("[A] word or phrase in a statute must not be read in a  vacuum; it must be harmonized with the whole statute.").

Here, the trial court found that Gardin's testimony established that the services LSR provided to Oliver were to develop his personal and social skills so he could become independent. In support of that finding, Nationwide relies on the following question-and-answer from Gardin's deposition:

> *Q*. Would it be fair to say that Life Skills Residential['s] goal is to provide the least restrictive environment to develop the personal and social skills of Donald Oliver?

> *A*. To support the development of those skills, that is correct. The least amount of disablement while still accounting for health and safety of the patient making sure they are doing what they are supposed to be doing.

Nationwide's heavy reliance on that testimony is misplaced. First, Nationwide's counsel did not precisely state the statutory language. The question is whether LSR *assisted* in the development of personal and social skills, not whether it provided the least restrictive environment for the development of those skills. Second, Gardin also testified that LSR did not provide personal care services to Oliver or the other residents. Specifically, he stated that "outside of personal care services, which we do no[t] provide or include at all, we provide almost all other services." He also testified that LSR does not provide "direct personal care." Third, and most important, "[t]he duty to interpret and apply the law is allocated to the courts, and the statement of a witness is not dispositive." *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 698 n 4; 818 NW2d 410 (2012). So Gardin's statements characterizing the nature of the services are not dispositive. Instead, we must look to the services themselves to determine whether they constitute the development of personal and social skills for purposes of MCL 400.706(1).

The services provided to Oliver consisted of reminding him to perform daily activities and conducting daily checks on his health and safety.[6] LSR argues, and we agree, that these

---

must be construed as being "of the same kind or nature" as the particular items enumerated. *Sands Appliance Serv, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000). MCL 400.706(1) does not end with a general word or phrase. Instead, "the development of those personal and social skills required to live in the least restrictive environment" is merely the last item in a list.

[6] In addition to Gardin's testimony, Nationwide relies on testimony from Dr. David Cowan, a psychologist and one of LSV's clinical directors. Dr. Cowan did *not* work for LSR. He stated: "I am not an [LSR] employee and I don't have much information about them that I would be able to tell you." Nationwide nonetheless highlights Dr. Cowan's general testimony regarding the

services cannot constitute personal care because they are covered by the AFCFLA's definition of "supervision," which provides as follows:

> (7) "Supervision" means guidance of a resident in the activities of daily living, including all of the following:[7]
>
> (a) Reminding a resident to maintain his or her medication schedule, as directed by the resident's physician.
>
> (b) Reminding a resident of important activities to be carried out.
>
> (c) Assisting a resident in keeping appointments.
>
> (d) Being aware of a resident's general whereabouts even though the resident may travel independently about the community. [MCL 400.707(7), as amended by 1987 PA 257.]

The services performed by LSR plainly fall under the definition of supervision because they constitute guidance of the resident in the activities of daily living, either as a general matter or under one of the specific examples provided by the statute. And "[w]hen the Legislature uses different words, the words are generally intended to connote different meanings." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n*, 484 Mich 1, 14; 795 NW2d 101 (2009). Thus, personal care is clearly something distinct from supervision. We can discern from the definition of supervision that personal care requires something more, or at least different, than guidance and reminders to the residents. We need not decide the precise contours of personal care, however, because the services at issue here amount to no more than supervision.

Because we conclude that LSR did not provide personal care to Oliver or the other residents, we need not decide whether LSR provided room and board under the AFCFLA.[8] The statute provides that even if room and board is provided, it does not constitute adult foster care unless the facility also provides supervision, personal care, and protection. MCL 400.704(7). Thus, all of those components must be established in order for the services to be considered the provision of foster care. So the lack of personal care means that LSR was not providing adult foster care and did not need to be licensed as an adult foster care facility. Accordingly, the services were not unlawfully rendered.

---

purpose of semi-independent living situations. However, this is not evidence of services that LSR provided to its residents.

[7] Although at all times relevant to this appeal the definition of supervision included the phrase "including *all* of the following," it was amended by 2018 PA 557, effective March 28, 2019, to now state "including *one or more* of the following."

[8] MCL 400.703 was amended by 2018 PA 557, effective March 28, 2019, to include a definition of "board" as "food service provided at the adult foster care facility." MCL 400.703(10).

The caselaw cited by Nationwide does not change our view of this case. Nationwide relies primarily on *Keys of Life v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 27, 2016 (Docket No. 328227), which is not precedentially binding on this Court, MCR 7.215(C)(1). In any event, the case is inapposite. In that case, after the accident the injured person functioned at the level of a young child, being unable to work or care for himself on his own or even be alone in a room. The injured party was housed in the plaintiff's apartment care program, where he was provided with 24-hour one-to-one attendant care and two-to-one care while being transported and when he was getting dressed and showering. The injured person was unable to cook for himself, do his laundry, or clean, and an attendant provided these functions. *Id.* at 1, 4. Given those circumstances, this Court held that that the defendant-insurer had established that the plaintiff provided adult foster care services and therefore was required to be licensed under MCL 400.713(1). *Id.* at 4.

In contrast to the extensive personal assistance required by the injured person in *Keys of Life*, Oliver was capable of performing all tasks by himself and merely required prompting to do so. Another unpublished caselaw relied on by Nationwide, *Riverview Macomb Home and Attendant Care, LLC v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2016 (Docket No. 327030), is distinguishable on the same grounds. There, the injured person required 24-hour attendant care and assistance "with daily activities such as showering, personal hygiene, dressing, medication and transportation." *Id.* at 4.

Nationwide relies primarily on *Keys of Life* even though it is unpublished because the one relevant published case provides little detail about the care provided to the residents. In *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51; 744 NW2d 174 (2007), this Court held that the services provided by the plaintiffs were not lawfully rendered under MCL 500.3157 in part because they not licensed as an adult care facility, *id.* at 57-58, but the majority opinion does not discuss the specific services the injured party received or whether those services met the statutory definition of adult foster care.

The same is true for the final case cited by Nationwide, *Healing Place, Ltd v Farm Bureau Mut Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued August 5, 2010 (Docket No. 286050), rev'd 488 Mich 1026 (2011). In that case, the Supreme Court later adopted the dissenting judge's opinion that the plaintiff was an adult foster care facility because the injured person " 'require[d] supervision on an ongoing basis but [did] not require continuous nursing care,' MCL 400.703(4)." *Id.* (WILDER, J., concurring in part and dissenting in part) at 2. Here, the parties correctly acknowledge that the pertinent inquiry in determining whether LSR must be licensed as an adult foster care facility is whether it provides foster care as defined by AFCFLA.

In sum, Nationwide has not identified any case analogous to the circumstances presented here, i.e., the residents live alone in private homes and are able to perform the activities of daily living but require prompting and reminders from the staff to do so. If anything, the caselaw cited by Nationwide demonstrates that a determination of whether a facility provides adult foster care is dependent on the facts of each case. And, for the reasons discussed, we conclude that the evidence establishes that LSR did not provide personal care to its residents as that term is defined by the AFCFLA. Accordingly, the trial court erred in determining that LSR was required to be

licensed as an adult foster care facility and in granting LSR summary disposition. However, we disagree with LSR that it is entitled to summary disposition under MCR 2.116(I)(2). Although LSR's claim is not defeated on the grounds that it failed to comply with licensing requirements, it still bears the burden of proving that the charge for the services was reasonable and that the expenses were reasonably necessary. MCL 500.3107(1)(a); *Williams v AAA Mich*, 250 Mich App 249, 258; 646 NW2d 476 (2002).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro