*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY L. SOAVE and UNITARY
AFFILIATES,

Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

UNPUBLISHED
November 30, 2023
APPROVED FOR
PUBLICATION
January 4, 2024
9:05 a.m.

No.   364415
Court of Claims
LC No.   21-000156-MT

Before: HOOD, P.J., and M. J. Kelly and FEENEY, JJ.

PER CURIAM.

It is often said that nothing is certain but death and taxes.  And it would seem that it is equally certain that there will still be appeals involving a tax that is long since dead.  Although the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq.* was repealed several years ago, we are still faced with a case involving the MBTA.[1]  In this case, the question presented is whether an audit of an individual business included in a unitary business group (UBG) extends the statute of limitations for the filing of the UBG's tax returns.  We agree with the Court of Claims that it does not and, therefore, the UBG's 2008 and 2009 returns were untimely.  Accordingly, we affirm the Court of Claims.

THE UNITARY BUSINESS GROUP

The trial court summarized the background facts that led to this dispute:

---

[1] The MBTA, enacted by 2007 PA 36, was replaced by the Income Tax Act, MCL 206.1 *et seq.* as amended by 2011 PA 38 and 2011 PA 39.  Certain exemptions under the MBTA were continued over to the Income Tax Act and the MBTA will finally phase out by the tax year 2031.  See 2019 PA 90.

Soave is an individual who held ownership interests in a variety of companies during the relevant tax years, including City Auto Storage, doing business as Parts Galore, LLC (Parts Galore), and Checker Sedan Co. Soave filed timely tax returns for Parts Galore and Checker Sedan Co. for tax years 2008 through 2011.

Sometime in 2012 or 2013, defendant selected Parts Galore and Checker Sedan Co. for a desk audit covering tax years 2008-2011, which related specifically to both companies' qualification for small business alternative credits (SBACs). Following the audit, defendant denied Parts Galore an SBAC for the 2008-2011 tax years.

Parts Galore requested an informal conference to address the denial of the SBAC, but withdrew its request so that it could refile its tax returns as part of a larger UBG that included 55 to 77 total companies, depending on the tax year. The parties dispute whether it was plaintiff or defendant that determined that Soave's companies were part of a UBG. [Tr Ct Op, pp 2-3.]

Regardless of the impetus for the refiling of the tax returns as part of a UBG, plaintiff did file combined UBG returns in October 2014 for tax years 2008 and 2009.[2] The UBG returns for tax years 2010 and 2011 were filed in early November 2014. [Tr Ct Op, p 4.] It was not until 2018 that defendant processed the returns, issuing a refund for tax year 2011. Plaintiff disagreed with the assessment and requested an informal conference. [*Id*.] This led to several telephone conferences and an informal conference in June 2019. Although some issues were resolved, as the trial court explained,

defendant argued, for the first time, that plaintiff's 2008-2009 UBG returns were untimely. According to defendant, during the audit, and "upon further review of the UBG member accounts during the reconciliation of payments, [defendant] determined that the UBG returns for 2008 and 2009 were untimely." More specifically, as a new filer, the UBG's 2008 and 2009 tax returns were filed outside of the four-year statute of limitations in the Revenue Act, MCL 205.27a(2). [Tr Ct Op, p 4.]

After another informal conference in September 2020 in relation to the 2008 and 2009 tax returns, the referee presiding over the informal conference agreed that plaintiff was entitled to a deadline extension for filing the 2008 and 2009 returns.[3] [Tr Ct Op, p 5.] Defendant disagreed,

---

[2] Both returns were initially filed on October 2, 2014. The 2009 return contained some formatting errors and was refiled on October 20, 2014. [Tr Ct Op, p 3-4.]

[3] The Informal Conference Recommendation by the Department of Treasury's hearings division referee was in Docket No. 20200916 seeking MBTA claimed overpayment in 2008 and 2009. The parties subsequently entered into a settlement agreement on September 30, 2021 regarding plaintiff's MBTA liability for the 2010-2011 tax years that did not address the current refund request for 2008-2009. See Informal Conference Docket No. 20190413

as did the Hearings Division, which concluded in May 2021 that the referee's recommendation was rejected and plaintiff could not use the audit of a UBG member to extend the period of limitations for the UBG itself. [*Id.* at 5-6.]

> [A] taxpayer is a person or a unitary business group, but not both. Two of the members of the UBG here were audited before the UBG was even formed. But anywhere from 53-75 other members (depending on the tax year) were not under audit. The UBG is the taxpayer here, and it is only by virtue of the UBG's filing status as a UBG that it generated overpayments resulting in the claim for refund. The UBG cannot fail to satisfy its obligation to timely file and then use an audit of another single member(s), an entirely different taxpayer, to extend the limitations period to request overpayments that were never available to that other taxpayer. [Reasons and Authority for the Decision of the Department of Treasury, pp 4-5.]

This led to plaintiff filing suit in the Court of Claims for a refund of its claimed overpayments for tax years 2008 and 2009.

## THE COURT OF CLAIMS ACTION

Plaintiff's March 3, 2022 Amended Complaint contained two counts asserting that plaintiff's claimed overpayments in its 2008 and 2009 MBTA returns were proper, and that plaintiff was entitled to the available MBTA loss on its 2010 MBTA return; in short, plaintiff anticipated a significant claimed overpayment or refund based on the "carryforward impact of the adjustments at issue from tax year ending December 31, 2009 to tax year ending December 31, 2010." [1st Amended Complaint, p 12.] Defendant moved for summary disposition based upon MCR 2.116(C)(7) (claim barred by release and by the statute of limitations) and MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff filed a countermotion for summary disposition. The trial court granted defendant's motion and denied plaintiff's counter motion.

## STATUTE OF LIMITATIONS

We turn first to the question whether plaintiff's claim for a refund related to the 2008 and 2009 tax years is barred by the statute of limitations and, therefore, summary disposition under MCR 2.116(C)(7) was appropriate. We review the trial court's ruling de novo. *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 550; 909 NW2d 495 (495 (2017). As explained in *Allstate*, *id.* at 550-551:

> When addressing such a motion, a trial court must accept as true the allegations of the complaint unless contradicted by the parties' documentary submissions. *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Although not required to do so, a party moving for summary disposition under Subrule (C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). If no material facts are disputed, whether a plaintiff's claim is barred by the pertinent statute of limitations is a question of law for the court to determine. *Dextrom* [*v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).]

The primary question presented in this appeal is whether the desk audits of the returns for the two entities extended the period of limitations for the UBG. MCL 205.27a(2) provides in relevant part that the "taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return." It is not in dispute that, under the default four-year statute of limitations under MCL 205.27a, absent an extension, the 2008 return was due on April 30, 2009, with a deadline for claiming a refund being April 30, 2013, and the 2009 return was due on April 30, 2010, with a deadline for claiming a refund being April 30, 2014. Plaintiff argues that it was entitled to an extension of the statute of limitations under MCL 205.27a based upon the then-pending desk audits of the two constituent entities (i.e., Parts Galore, LLC and Checker Sedan Co.). Under the version of MCL 205.27a(3)(a) that applies to audits commenced before September 30, 2013, the statute of limitation is tolled for the duration of the audit and for one year afterward. But, even if the statute would give an extension to the constituent entities that, if also applied to the UBG returns, would render those returns timely, we agree with defendant and the Court of Claims that any such extension would not, in fact, apply to the UBG because the entities and the UBG are different taxpayers. An extension afforded one taxpayer (or, in this case, two taxpayers) simply cannot be transferred to a different taxpayer.[4] And, more to the point, the tax returns for the individual entities should never have been filed.

First, it is clear that a UBG is a "taxpayer." MCL 208.1117(5). And as explained in *D'Agostini Land Co, LLC v Dept of Treasury*, 322 Mich App 545, 551; 912 NW2d 593 (2018), it is required to file a tax return, both under the MBTA and the successor Corporate Income Tax (CIT):

> A unitary business group is not a separate and distinct legal entity, like a corporation, limited liability company, or partnership; rather, the group is purely a creation of tax law. In general, a unitary business group is a group of related US persons whose business activities are sufficiently interdependent. MCL 206.611(6) (CIT); MCL 208.1117(6) (MBT). To qualify as a unitary business group, one member of the proposed group must own or control more than 50% of the other members and there must be a sufficient connection between the members to meet one of two relationship tests. MCL 206.611(6) (CIT); MCL 208.1117(6) (MBT). *If a group of businesses qualifies as a unitary business group in a particular tax year, then the group must file a unitary tax return for that year.* MCL 206.691(1) (CIT); MCL 208.1511 (MBT). Michigan, like several other states, has adopted the unitary-business-group concept in an effort to measure more accurately the related group's taxable activities in the state. [Emphasis added.]

Moreover, MCL 208.1117(5) defines a "taxpayer" as "a person or a unitary business group," reflecting that a UBG is a separate taxpayer. Under the statute's clear language, a taxpayer can be either an individual or a UBG but not both. Indeed, plaintiff concedes in its brief that a UBG is

---

[4] Defendant's argument focuses on the UBG being a separate taxpayer from the individual entities. Defendant does not dispute that plaintiff's argument would prevail if the UBG and the individual entities were deemed to be the same taxpayer.

considered to be a separate taxpayer and that filing a UBG return is mandatory, not elective. This leads to the conclusion that once an entity is considered to be part of a UBG, that single entity ceases to be a separate taxpayer. Still, we are not led to the conclusion plaintiff promotes that an audit of the individual entity is necessarily an audit of the UBG.[5]

Rather, we find that either (1) a single return for the UBG should have been filed and no returns for the individual entities should have been filed and are nullities, or (2) the UBG did not qualify for the filing of a UBG return and, therefore, the individual entities properly filed their returns and the UBG return is a nullity. The parties appear to agree that the first possibility is the correct one. But in the final analysis, it does not matter because if in fact a UBG return was not required, it does not matter whether it was timely or not—it is a nonentity. And if the UBG return was required, then plaintiff is essentially arguing the audit of returns that should not have been filed tolls the statute of limitations for the returns that should have been filed but were not. Put simply, defendant was auditing returns that had no meaningful existence. Because the UBG was the taxpayer in this case and was a different taxpayer than the individual entities,[6] we agree with the trial court that plaintiff "has no legal basis for its claim that a pending audit or informal-conference request for a single member of a UBG extends the statute of limitations for the entire UBG." [Tr Ct Op, p 11.]

We see no legal basis to transfer the tolling of the statute of limitations from the audit of returns that should never have been filed to returns that should have been filed but were not. For that matter, even if both sets of returns were proper, we are unaware of any support for the tolling of one set to create tolling for the other. Furthermore, as stated in the Revenue Act, MCL 205.27a(4), "The statute of limitations is extended only as to those items that were the subject of the audit."[7] The UBG returns, which did not even exist when the audit began, were not the subject of the audit of the individual entities. Nor, for that matter, were the individual entities being audited to determine whether there should have been a UBG return instead of the individual entity returns.[8] Again, we agree with the Court of Claims that "the extension on the statute of limitations would have applied only to the SBAC issue [involved in the audit]. And the UBG contained 55 to

---

[5] Even if, as plaintiff argues, defendant looked to the other entities in the UBG to determine if the two individual entities being audited were entitled to receive the SBAC, that does not mean the audit would now extend to the UBG as a whole. The audit would still only extend to those two entities who are actually being audited.

[6] We agree with the trial court that MCL 208.1117(5), which defines the term "taxpayer" as "a person or a unitary business group," recognizes a UBG as a separate and distinct taxpayer. See *D'Agostini*, 322 Mich App at 555.

[7] MCL 205.27a(4) goes on to define "items that were the subject of the audit" to mean "items that share a common characteristic that were examined by an auditor even if there was no adjustment to the tax as a result of the examination. Items that share a common characteristic include items that are reported on the same line on a tax return or items that are grouped by ledger, account, or record or by class or type of asset, liability, income, or expense."

[8] And we fail to see how an audit of two entities could possibly determine that a UBG return covering over six dozen entities should have been filed.

77 total companies, including Parts Galore and Checker Sedan Co., so 53 to 75 of which were not included in the audit." [Tr Ct Op pp 11-12.]

Plaintiff also argues that a genuine issue of material fact persists whether it was plaintiff or defendant who first raised the issue of whether a UBG existed. While there may be a genuine issue of fact regarding who first raised the issue, it is not one of material fact. Just as it does not matter whether a UBG return was required for tax years 2008 and 2009, it also does not matter which party discovered that that a UBG existed. Even assuming defendant discovered the existence of a UBG during the desk audits, that does not mean the scope of the audit was expanded to include the UBG or that the tolling provisions of MCL 205.27a would apply to the subsequent UBG returns. At best, information revealed during the audit may have led to the discovery that the individual entities were part of a larger UBG that should have been the taxpayer filing a return. But that does not, as plaintiff argues, somehow bring the UBG within the scope of the audit. While in either case the audit may have led to the discovery of the employer's or the UBG's failure to file, it does not extend the scope of the original audit. Simply put, the discovery during the audit that plaintiff was filing individual returns for each of its 55 to 77 business entities, rather than filing a UBG return, did not suspend the period of limitations for the filing the UBG returns. Rather, it merely revealed a case of a failure to file a tax return.

## FEDERAL INCOME TAX EXTENSION

Plaintiffs next argues that some of the entities that make up the UBG requested extensions on their federal and MBTA returns for the years at issue; thus, the due date for the UBG return for 2009 was therefore also extended to December 30, 2010, which then means that the period of limitations for that return would not expire until December 30, 2014, making that return timely.[9]

The Court of Claims rejected this argument, noting that MCL 208.1505(4) "provided that if a taxpayer received a federal-income-tax extension, 'the filing of a copy of the request for extension together with a tentative return and payment of an estimated tax with the department by the due date . . . shall automatically extend the due date for the filing of an annual or final return' by eight months." The court went on to opine:

> Plaintiff has not provided the Court with evidence that any of its companies ever received a federal-income-tax extension, or that the companies submitted the necessary documentation and estimated tax payment in advance of the due date. Regardless, plaintiff does not support adequately its assertion that the federal-tax extension for some of the individual companies would also extend the state-tax deadline for a UBG. As explained above, the UBG is a distinct taxpayer under the MBTA. The Court declines to read language into Section 505 of the MBTA that would also extend the deadline to file a separate UBG return.

Unable to contradict the trial court's conclusion that it had not supplied the documentation, plaintiff argues that it was not required to file an extension request because a tax payment was not

---

[9] This argument would not render the 2008 return timely as the period of limitations would have expired the year before.

due. In support of its position, plaintiff refers to the 2021 version of defendant's Form 4: Instructions for Application for Extension of Time to File Michigan Tax Returns. Specifically, plaintiff quotes the line "An extension is not necessary when you expect to claim a refund." To the extent that this statement in a Treasury form is authoritative, plaintiff overlooks the import of the sentence. The sentence does not mean that filing the documentation is unnecessary because an extension is automatic. Rather, the sentence provides that, where a refund is expected, an extension is not necessary. The next sentence, which plaintiff does not quote, explains: "Late filing penalty may not apply as refunds can be claimed up to 4 years from the original due date without an extension." In other words, there is no penalty because there is no late payment of the tax and the taxpayer does not need an extension to claim a refund because the taxpayer has four years *from the original due date* to claim the refund.

Arguably an extension of the due date would also extend the period of limitations. But we need not decide if that is true because, as the Court of Claims concluded, plaintiff has not demonstrated that it requested and was granted an extension. Therefore, the four-year period of limitations expired four years after the original due date of the return, not four years after an extended due date.

Moreover, plaintiff fails to address the second reason the Court of Claims offered in rejecting its argument, namely that plaintiff does not demonstrate how an extension of the due dates for some of the individual entities' federal returns would operate to extend the state deadline for the UBG return. And we are not aware of any authority that provides the extension of one taxpayer's federal return automatically provides an extension for a different taxpayer's state return.

NEW FILERS

Plaintiff next argues that the Court of Claims disregarded its argument regarding defendant's change in policy regarding "new filers." But the Court of Claims did not disregard plaintiff's argument; it rejected plaintiff's argument:

> The Court also disagrees with plaintiff's argument that defendant's discovery responses constituted an admission that defendant consented to an extension. In its discovery responses, defendant explained that its "official position and/or policy" is to consider a first-time UBG filer as a "new filer" for purposes of the statute of limitations, even if the UBG includes members that previously filed a tax return as a solo entity. Defendant explained, "While certain Treasury employees may have misapplied or misunderstood this policy, an error on the part of an employee cannot be viewed as a change in policy." The Court disagrees with plaintiff's characterization of defendant's statement as an admission that its employee misapplied the policy (or that defendant's policy position has somehow changed). Defendant's discovery response is framed in hypothetical terms. Defendant suggests that if an employee misinterpreted the policy, then the employee's misinterpretation would not bind the Department. Defendant does not concede that any of its employees misinterpreted the law. Even if they had, plaintiff provides no legal basis for why the Department would be bound by an auditor's misinterpretation of the law, particularly when only the state treasurer has the

authority to extend the limitations period. See MCL 205.27a(3)(b). [Tr Ct Op, p 13.]

Plaintiff's argument regarding the alleged change in policy focuses on this statement in the hearing referee's decision:

> According to the Department representative at the informal conference, the Department modified its position on UBG filings as non-filers for purposes of statute of limitations and voluntary disclosure process and based on this policy, the UBG as a taxpayer was now a new filer. As a new filer, the UBG did not have the protection of the tolling of statute of limitations for the desk audit and informal conference appeal. Without the tolling of the statute of limitations, the UBG Returns for 2008 and 2009 were deemed to be filed outside the statute of limitations and the credit forwards associated with those Returns were denied. [Referee decision, p 6.]

On review, defendant rejected the hearing referee's determination and, in particular, concluded that "the referee incorrectly interpreted the testimony of the Department's auditor regarding Department policy positions and failed to cite to any published policy position establishing that there was in fact a policy change." (Dept decision, p 3.)

Plaintiff links the issue of whether it is a "new filer" to the voluntary disclosure process under MCL 205.30c.[10] The trial court's rejection of the factual predicate for plaintiff's argument aside, there are a number of flaws with plaintiff's argument. First, as defendant points out, the taxpayer must apply to participate in the voluntary disclosure program and enter into an agreement with the State Treasurer. See MCL 205.30c(1) and (2). Plaintiff has not produced that

---

[10] The Department's decision explained the voluntary disclosure program as follows:

> The Department's voluntary disclosure program is an administrative procedure in which a taxpayer, usually a company located in another state that has had a taxable presence in this state for several years but has neither filed a return in nor paid tax to this state, can voluntarily disclose its nexus to this state and negotiate an agreement to pay its liability. A company typically agrees to register and pay its current and future taxes as well as tax and interest for a prescribed number of open lookback years.

> The purpose of a voluntary disclosure program is to encourage companies to comply with the state's tax laws to generate revenue that the state may not have had if the company had not come forward to disclose its liabilities. In return, a company can receive benefits such as limitations on the lookback period and the abatement of penalties. The true benefit to the state is that a voluntary disclosure agreement requires a company to register for taxes in this state and agree to future compliance. Therefore, to be eligible, a company must not have previous[ly] filed a return in this state. [Reasons and Authority for the Decision of the DOT, p 4.]

documentation. Second, we would also point out that those sections specifically state the treasurer "may" enter into these agreements. Use of the word "may" reflects something that is permissive, not mandatory. See *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App __; ___ NW2d ___ (Docket No. 362094, rel'd 5/25/2023), slip op at 5. Thus, even if plaintiff may have qualified for the voluntary disclosure program and an application had been submitted, the State Treasurer would not have been obligated to grant it.

Third, MCL 205.30c does not provide a basis to extend the period of limitations in order to claim a refund. Rather, it provides a mechanism to arrange for the payment of an unpaid tax liability and settling any potential liability.[11] Fourth, it is not particularly relevant whether defendant changed its policy or interpretation of the statute nor whether any "previous" interpretation or policy would have benefited plaintiff. What matters is whether plaintiff is entitled to any such benefit under a correct interpretation of MCL 204.30c. And that brings us back to the point that the statute simply cannot be used in the context of claiming a refund rather than arranging a settlement of overdue taxes where a taxpayer fails to timely file in the past.

What plaintiff ultimately overlooks in this case is that it was plaintiff's obligation to determine whether a UBG return should have been filed and, if it was, to file it in a timely fashion. While we would certainly expect that defendant endeavors to find taxpayers who failed to file a return, for both tax scofflaws as well as those making an honest mistake, the burden nevertheless rests with the taxpayer to determine what forms must be filed and what the deadline is for that filing. Simply put, any lost refund that plaintiff might have been entitled to receive is not the result of defendant's actions, but of plaintiff's failure to recognize its obligation to file a UBG return and to do so in a timely manner.

IMPACT OF SETTLEMENT AGREEMENT

REGARDING 2010 AND 2011 TAX YEARS

Finally, plaintiff argues that the parties' settlement agreement regarding tax years 2010 and 2011 did not bar the claims in Count II of the complaint. The Court of Claims did not address this issue because it found it to be moot in light of its conclusion that the claims discussed above were barred by the statute of limitations. Had we determined that the Court of Claims erred in concluding that the claims related to the 2008 and 2009 were barred, we would agree that a remand to the Court of Claims would be appropriate to address plaintiff's argument regarding tax years 2010 and 2011. But plaintiff concedes that this argument is only relevant if we hold that the 2008 and 2009 returns are not untimely. And because we agree with the Court of Claims that the 2008 and 2009 returns were untimely, we need not address the issue raised with respect to the 2010 and 2011 returns.

---

[11] See, e.g., MCL 205.30c(5)(a), which restricts defendant's ability to "assess any tax, delinquency for a tax, penalty, or interest covered under the agreement for any period before the lookback period identified in the agreement."

Affirmed.  Defendant may tax costs.

/s/ Noah P. Hood
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney